1

2

3

4

5

6

7

8                      **UNITED STATES DISTRICT COURT**

9                      **EASTERN DISTRICT OF CALIFORNIA**

10

11    SYLVESTER WILLIAMS,                    )   Case No.: 1:10-cv-01250-SAB (PC)
                                             )
12                        Plaintiff,         )
                                             )   ORDER DENYING MOTIONS FOR
13          v.                               )   SUMMARY JUDGMENT, DENYING
                                             )   PLAINTIFF'S MOTIONS TO COMPEL, AND
14    SERGEANT R. ANDERSON, et al.,          )   MOTION FOR RULING ON MOTIONS FOR
                                             )   SUMMARY JUDGMENT
15                        Defendant.         )
                                             )   [ECF Nos. 55, 56, 100, 101, 108]
16                                           )
                                             )
17   _____     )

18          Plaintiff Sylester Williams is appearing pro se and in forma pauperis in this civil rights action

19   pursuant to 42 U.S.C. § 1983.  Pursuant to 28 U.S.C. § 636(c), the parties have consented to the

20   jurisdiction of the United States Magistrate Judge.  Local Rule 302.

21                                            **I.**

22                                     **BACKGROUND**

23          This action is proceeding against Defendant Anderson on Plaintiff's claim that he was

24   subjected to conditions of confinement in violation of the Eighth Amendment.

25          On July 7, 2014, Plaintiff filed a motion for summary judgment.  (ECF No. 55.)

26          On July 24, 2014, Defendant Anderson filed a motion for summary judgment.  (ECF No. 56.)

27   Plaintiff filed an opposition to Defendant's statement of undisputed facts on October 24, 2014 (ECF

28

                                               1

1    No. 82), and an opposition to Defendant's motion for summary judgment on December 1, 2014 (ECF

2    No. 88).

3                                          **II.**

4                                   **LEGAL STANDARD**

5            Any party may move for summary judgment, and the Court shall grant summary judgment if

6    the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

7    judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); <u>Washington Mutual Inc.</u>

8    <u>v. U.S.</u>, 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is

9    disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record,

10   including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the

11   materials cited do not establish the presence or absence of a genuine dispute or that the opposing party

12   cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks

13   omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not

14   required to do so.  Fed. R. Civ. P. 56(c)(3); <u>Carmen v. San Francisco Unified School Dist.</u>, 237 F.3d

15   1026, 1031 (9th Cir. 2001); <u>accord</u> <u>Simmons v. Navajo County, Ariz.</u>, 609 F.3d 1011, 1017 (9th Cir.

16   2010).

17           Defendants do not bear the burden of proof at trial and in moving for summary judgment, they

18   need only prove an absence of evidence to support Plaintiff's case.  <u>In re Oracle Corp. Securities</u>

19   <u>Litigation</u>, 627 F.3d 376, 387 (9th Cir. 2010) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323

20   (1986)).  If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate

21   specific facts demonstrating the existence of genuine issues for trial."  <u>In re Oracle Corp.</u>, 627 F.3d at

22   387 (citing <u>Celotex Corp.</u>, 477 U.S. at 323).  This requires Plaintiff to "show more than the mere

23   existence of a scintilla of evidence."  <u>Id.</u> (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252,

24   (1986)).

25           However, in judging the evidence at the summary judgment stage, the Court may not make

26   credibility determinations or weigh conflicting evidence, <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d

27   978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the

28

light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, <u>Comite de Jornaleros de Redondo Beach v. City of Redondo Beach</u>, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).  The Court determines *only* whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner.  <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

### III.

### DISCUSSION

**A.    Allegations of Complaint**

The incidents at issue in the case took place while Plaintiff was incarcerated at Corcoran State Prison (CSP).  The sole defendant is Sergeant R. Anderson.

Plaintiff's allegations arise out of the conditions of his confinement at CSP between February 25, 2009, and until the time Plaintiff filed his complaint on July 13, 2010.  Plaintiff alleges that Defendant Anderson housed him in a manner that subjected him to cruel and unusual punishment. Defendant often moved Plaintiff to different cells that were next to "screaming beating psychiatric patients who scream and beat at all hours of the day and night and deprive [Plaintiff] of sleep and peace of mind at all times."  Plaintiff alleges that Defendant Anderson refused to monitor the noise level in the security housing unit.  As a result of the noise, Plaintiff alleges that he had a severe nervous breakdown and had to be placed on suicide watch for stress due to excessive noise.  Plaintiff has suffered three ear injuries and received medical attention for his injuries.

**B.    Undisputed Material Facts[1]**

1.    Plaintiff Sylvester Williams is a state prisoner who was confined at California State Prison – Corcoran (CSP) at times material to the claims at issue.  (ECF No. 56-3, Def.'s Ex. A.)

---

[1] Facts which are immaterial to resolution of the parties' motions for summary judgment, unsupported by admissible evidence and/or redundant have been omitted.

2.      Defendant R. Anderson was a correctional sergeant at CSP, assigned to the Security Housing Unit (SHU), 4-A-1, at times material to the matters at issue.  (ECF No. 19, ¶¶ 7-8.)

3.      As a result of Plaintiff's sexual proclivities, the Departmental Review Board (DRB) recommended that Plaintiff be transferred to CSP to serve an indeterminate SHU term. Plaintiff was transferred to the SHU at CSP in August 2006.  (Def.'s Ex. A, p. 20-22.)

4.      During his 2006 SHU term, Plaintiff complained of noise inside the SHU by submitting a request for reasonable modification or accommodation to the medical staff.  (Def.'s Ex. A, p. 60-61.)

5.      According to Plaintiff, he "made numerous complaints to [correctional officers] Olivis and Anaya bed watch verbally and in the form of writing and a 602 that those inmates are causing me problems and stress that the noise level should be controlled in 4A2-L-A-Section.  I have been constantly getting into shouting matches with those inmates who now consider me as a [sic] enemy throughout the entire unit and on the yard for complaining to staff about their behavior.  (Def.'s Ex. A, p. 60-61.)

6.      The request for accommodation was forwarded to custody staff, who assigned Sergeant Apodaca to investigate Plaintiff's claims.  (Def.'s Ex. B-2, p. 110.)

7.       Plaintiff told Sergeant Apodaca that he had received a bed move to another section of the SHU, and that he was satisfied with his housing assignment.  (Def.'s Ex. B-2, p. 110.)

8.      Sergeant Apodaca advised Plaintiff that his request to be transferred to a different yard off the SHU could not be granted, as that decision would have to be made by a classification committee.  (Def.'s Ex. B-2, p. 110.)

9.      Apodaca also told Plaintiff that Plaintiff had no documented enemies at CSP.  (Def.'s Ex. B-2, p. 110.)

10.     On October 8, 2006, Plaintiff submitted a sick call slip complaining of an ear infection, and as a result he was having problems.  (Def.'s Ex. B-1, p. 99.)

4

11.   Plaintiff was seen in the clinic on October 11, 2006.  The nurse found that Plaintiff had some pain, no fever or blood in the ear, but some reduced hearing acuity in Plaintiff's left ear.  (Def.'s Ex. B-1, p. 96.)

12.    On November 27, 2006, Plaintiff resubmitted his accommodation request asking to have it reinstated.  Plaintiff claimed that Sergeant Apodaca had fooled him into thinking that he could not be moved to another yard without being around "trouble makers."  When Plaintiff refused to cooperate with Sergeant Apodaca to resolve the issue, his appeal was withdrawn.  (Def.'s Ex. B-2, p. 110.)

13.   Plaintiff was released from the SHU on February 10, 2007, and transferred to High Desert State Prison (HDSP).  (Def.'s Ex. A, p. 8.)

**Facts Relating to Plaintiff's SHU term from 2009 to 2010**

14.   Plaintiff refused to participate in the indecent exposure prevention program, and Dr. Leduc notified staff that Plaintiff admitted he was testing staff boundaries to see what he could get away with.  (Def.'s Ex. A, p. 38.)

15.   On March 17, 2009, Plaintiff threatened to kill himself and others.  When transferred to the mental health crisis unit, Plaintiff was found to be in no distress, and without medical symptoms.  (Def.'s Ex. B-2, p. 141.)  Plaintiff was discharged without needing medication after being diagnosed with adjustment disorder.  (Def.'s Ex. B-2, p. 141-143.)

16.   On April 30, 2009, Plaintiff was seen by Dr. Ferguson, a psychologist.  Plaintiff was "pushing" for a single-cell chrono, and complaining about his case manager.  Plaintiff was also "pushing" to get out of the indecent exposure prevention program, stating "I have the ability to control myself if I want.  You have a lot of females who like it.  I only have an indecent exposure every two years or so.  I have been to prison nine times already, and you got cops who like it and want it."  (Def.'s Ex. B-2, p. 118.)

17.   On May 1, 2009, Plaintiff told his new case worker, C. Perez, that he wanted a chrono to get out of the indecent exposure prevention program.  (Def.'s Ex. B-2, p. 117.)

18.     On June 18, 2009, Plaintiff told the mental health doctor that he needed medication for sleep.  Plaintiff requested Benadryl for a few weeks, but indicated that he did not hear voices or see things.  Plaintiff made no mention of noise on the SHU unit.  (Def.'s Ex. B-2, p. 107.)

19.     On June 23, 2009, Plaintiff asked his case worker the criteria for a single-cell in the mental health crisis unit.  Plaintiff was told that when a person experiences a mental state in need of stabilization through medication, the staff might make a recommendation, but such was not needed in Plaintiff's case because he was stable. (Def.'s Ex. B-2, p. 103.)

20.     The following week, Plaintiff requested that his mental health status be elevated to the enhanced outpatient level of care.  Plaintiff complained of feeling cooped up in his cell, and his desire to get out for more discussion groups, air, and an occasional movie.  The caseworker noted that Plaintiff's main cause of stress was being in the SHU without activity.  (Def.'s Ex. B-2, p. 102.)

21.     On September 1, 2009, Plaintiff indicated that he was eating, sleeping, and feeling "ok."  He also claimed that he was able to sleep without taking his prescribed Benadryl. (Def.'s Ex. B-2, p. 97.)

22.     Plaintiff was seen by Dr. Thomas on September 29, 2009, and reported that he had not been sleeping well since discontinuing taking his Benadryl.  Plaintiff also claimed that he was agitated and irritable because of not sleeping, and that he was less tolerant of noise from others, causing him to yell and scream.  (Def.'s Ex. B-2, p. 95.)

23.     On October 27, 2009, Plaintiff began complaining to mental health staff about conditions in the SHU.  Plaintiff complained that he was having "an ongoing issue with staff due to the flies and the horrible smell from the dairy," claiming that these conditions caused him to throw away his food and go hungry.  Plaintiff was concerned about losing his single cell status, and threatened to kill any inmate who was placed into the cell with him.  (Def.'s Ex. B-2, p. 91.)

24.   On November 3, 2009, Plaintiff complained about the noise in the SHU.  Plaintiff told Dr. Thomas that his sleep was being interrupted by an inmate playing his radio at all hours. (Def.'s Ex. B-2, p. 90.)

25.   On December 21, 2009, Plaintiff submitted a sick call slip complaining of "a real bad ear infection in my left ear that hurts plus my migraine headaches are back with dizzy spells."  (Def.'s Ex. B-1, p. 37.)

26.   Plaintiff was seen by LVN Balbina, who noted that Plaintiff's pain was 4 on a scale of 10.  The nurse conducted a visual inspection of the ear, and could not see the tympanic membrane.  She flushed Plaintiff's ear canal with water, and toilet tissue was expelled.  The ear was again inspected, and Plaintiff's tympanic membrane was intact, with no signs or symptoms of infection.  Plaintiff was told not to put things into his ears.  Plaintiff verbalized that he understood.  (Def.'s Ex. B-1, p. 37.)

27.   By January 12, 2010, Plaintiff requested an increase in his Benadryl prescription due to stress, but then indicated he no longer needed a medication change because his "stressor" had passed.  (Def.'s Ex. B-2, p. 83.)

28.   On January 26, 2010, Plaintiff told his caseworker that he was "very upset because of the noise around me.  I cannot concentrate or focus.  I can't rest and am thinking of giving up on life.  I am not suicidal or homicidal now but I might be if they keep me here.  The caseworker informed an unnamed sergeant of the issue.  (Def.'s Ex. B-2, p. 81.)

29.   Plaintiff was admitted to the mental health emergency room where Dr. Minn's emergency room evaluation, dated the same day, indicates that Plaintiff self-diagnosed as suffering from "SHU syndrome."  Plaintiff was "adamant" about getting away from the SHU by all means.  (Def.'s Ex. B-1, p. 79.)  During the mental health exam, however, Dr. Minn noted  that Plaintiff was "relaxed, cooperative, smiling, and friendly," but that Plaintiff insisted on being away from the SHU because of the noise.  Plaintiff had no other psychiatric complaints other than stress.  (Def.'s Ex. B-2, p. 80.)

30.    On February 16, 2010, Plaintiff submitted a healthcare appeal claiming that he was having breakdowns and anxiety attacks because of loud televisions and radios in the SHU.  Plaintiff later withdrew the appeal.  (Def.'s Ex. A, p. 61.)

31.    On February 24, 2010, Plaintiff submitted a sick call slip indicating that he had an ear infection and his ear needed to be flushed out.  (Def.'s Ex. B-1, p. 27.)

32.    The following day, Plaintiff was seen by Dr. Neubarth, who indicated that Plaintiff had no pain and could still hear.  Plaintiff claimed that he had put rubber into his ears. (Def.'s Ex. B-1, p. 25-26.)  Dr. Neubarth found dark foreign bodies in each exterior ear canal, and referred Plaintiff to an Ear, Nose, and Throat (ENT) specialist for extraction. (Def.'s Ex. B-1, p. 26.)

33.    On March 6, 2010, Plaintiff submitted a request for interview to Sergeant Anderson, claiming that someone was "messing with" his grievances, and that an inmate (Jay cat) in cell 22 yells, bangs, and screams during the day and late at night, causing sleep deprivation.  (ECF No. 1, p. 8.)

34.    On March 8, 2010, Plaintiff submitted an inmate grievance to custody staff complaining about noise in the SHU.  Plaintiff claimed that there was a mentally ill inmate who yells, screams, and bangs his cup during the day and night.  (ECF No. 1, p. 11.)

35.    The following day, Plaintiff again submitted an inmate grievance claiming that the inmate in cell 4A1R-22, who was psychotic, was yelling, screaming and banging on his walls and toilet, starting early in the morning.  (ECF No. 1, p. 12.)

36.    Sergeant Anderson submitted responses to Plaintiff's grievance and request for interview, advising Plaintiff that the inmate in cell 22 had been moved during third watch.  (ECF No. 1, p. 8, 11.)

37.    On March 10, 2010, Plaintiff met with Dr. Nuff, his psychologist, regarding a letter Plaintiff had sent threatening a hunger strike.  The letter indicated that Plaintiff was still having problems with noise, but that other inmates were not complaining.  (Def.'s Ex. B-2, p. 74.)

**C.     Denial of Plaintiff's Motion for Summary Judgment**

Plaintiff bears the burden of proof at trial.  To prevail on his motion for partial summary judgment against Defendant Anderson, Plaintiff must affirmatively demonstrate that no reasonable trier of fact could find other than for him.  Soremekun, 509 F.3d at 984.  If Plaintiff meets his initial burden, Defendants are required to set forth specific facts showing there is a genuine issue for trial.  Id.

First, Plaintiff's motion for summary judgment is deficient in that Plaintiff failed to file a separate statement of undisputed material facts.  Pursuant to Local Rule 260, "Each motion for summary judgment or summary adjudication shall be accompanied by a "Statement of Undisputed Facts" that shall enumerate discretely each of the specific material facts relied upon in support of the motion and cite the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon to establish that fact.  The moving party shall be responsible for the filing of all evidentiary documents cited in the moving papers.  See Local Rule 260(a) (citing Local Rule 133(j)); see also Fed. R. Civ. P. 56.

Second, notwithstanding Plaintiff's failure to comply with Local Rule 260, Plaintiff's motion must be denied.   Plaintiff fails to present a coherent argument as to how the undisputed facts are sufficient to establish that there is no genuine issue of material fact.  Under Defendant Anderson's version of the facts submitted in support of his motion for summary judgment, Anderson denies that he failed to take steps to control the noise inside the SHU, which conflicts and/or contradicts Plaintiff's version of the facts presented in his declaration.  Plaintiff has not made a showing sufficient to establish that Defendant Anderson subjected Plaintiff to conditions posing a substantial risk of serious harm to his health and safety in violation of the Eighth Amendment.    As such, Plaintiff has failed to carry his burden to show the absence of a genuine issue of material fact for trial.  Accordingly, Plaintiff's motion for summary judgment against Defendant Anderson must be DENIED.

///

///

///

9

**D.      Defendant's Motion for Summary Judgment**

Defendant Anderson moves for summary judgment because the undisputed evidence shows that although Anderson never heard excessive noise in the SHU, he dealt with Plaintiff's complaints of noise in a timely manner.

**E.      Findings on Defendant's Motion for Summary Judgment**

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement." Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).  "[W]hile conditions of confinement may be, and often are, restrictive and harsh, they 'must not involve the wanton and unnecessary infliction of pain.'"  Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  "What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends upon the claim at issue. . . ."  Hudson v. McMillian, 503 U.S. 1, 8 (1992).  "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim."  Hudson, 503 U.S. at 9 (citation omitted).  With respect to this type of claim, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."  Id. (quotations and citations omitted).

Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm."  Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).  The deliberate indifference standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious. . . ."  Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety. . . ."  Farmer, 511 U.S. at 837.  Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it.  Id. at 837-45.  Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable,

albeit unsuccessful, response to the risk.  Id. at 844-45.  Mere negligence on the part of the prison

official is not sufficient to establish liability, but rather, the official's conduct must have been wanton.

Farmer, 511 U.S. at 835; Frost, 152 F.3d at 1128.

       1.      Subjective Component of Eighth Amendment Claim

      Under the subjective test, the prisoner must show that the prison official had "a 'sufficiently

culpable state of mind,'" on that amounts to "'deliberate indifference' to inmates health or safety."

Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991).  Deliberate indifference

is when a prison official "knows of and disregards an excessive risk to inmate health or safety."  Id.

Notably, "the official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837.  An Eighth

Amendment claimant need not show, however, that a prison official acted or failed to act believing

that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his

knowledge of a substantial risk of serious harm.  Id. at 842.  This is a question of fact.  Id.

      Plaintiff alleges he was exposed to constant, painful, debilitating noise in the SHU, prohibiting

his ability to sleep, making him dizzy, which resulted in him sticking varied objects into his ears in

order to block out the noise.  The banging, screaming, and loud noises occurred 24 hours a day.

Viewing the evidence in the light most favorable to Plaintiff, a genuine issue of material fact exists as

to whether Defendant Anderson knowingly failed to correct and remedy the conditions of confinement

to prevent the alleged harm.

      On March 6, 2010, Plaintiff submitted a request for interview to Sergeant Anderson, claiming

that someone was messing with his grievances, and informing him that an inmate (Jay cat) in cell 22

yells, bangs and screams during the day and late at night, causing sleep deprivation.  (ECF No. 1, at p.

8; ECF No. 82, Opp'n at 33.)  Anderson responded to Plaintiff's grievance on March 10, 2010, and

indicated the inmate was moved on March 10, 2010, during third watch.  (Id.)

      On March 8, 2010, Plaintiff submitted an inmate appeal form complaining that a mentally ill

patient in cell 22, yells, screams and bangs during the day and night, yet staff have done nothing to

stop the inmate.  Defendant Anderson granted Plaintiff's inmate appeal at the informal level on March

10, 2010, stating the inmate was moved out of the unit on March 10, 2010, during third watch.  (ECF No. 1, at p. 11.)

On March 14, 2010, Plaintiff submitted another inmate appeal form complaining that there was a screaming inmate who had been in cell 22 for over six months that was moved on March 10, 2010, and deprived many inmates of sleep.  Plaintiff requested the name of the Captain in order to correspond with him regarding the loud music taking place causing further sleep deprivation.  Plaintiff also requested Anderson to agree to ask third watch to monitor the noise and loud radio he has known about for years.  (ECF No. at p. 10; Opp'n at 9.)  Plaintiff's inmate appeal was granted at the informal level by Defendant Anderson who provided the name of the Captain and informed Plaintiff that the third watch staff would monitor the levels of noise throughout the housing unit.  (Id.)

On March 17, 2010, Plaintiff submitted a request for interview to Defendant Anderson in which Plaintiff stated:

> Anderson were you aware for about 6 months that the guy in cell 22 screamed and beat day and night depriving inmates of sleep.  Are you aware this goes on at this prison.  And Anderson were you made aware that I went to suicide watch, last January 2010 due to not being able to take the loud noises from these Jay Cats, and loud radios when I was in A-section, and that I spent 17 days on suicide watch, and refused to go back to A-section and was transferred to B section.  In other words did staff tell you about my mental issues and are you aware that the loud radios continue.

(ECF No. 1, at p. 9; Opp'n at 3.)  Defendant Anderson responded "Yes" to the grievance, which was dated March 18, 2010.  (Id.)

On March 17, 2010, Plaintiff also submitted an inmate appeal form in which Plaintiff complained of the loud noises caused by the music on the radios and screaming of psychiatric patients.  Plaintiff requested that someone contact Sergeant Johnson to let him know that Plaintiff was fed up with the loud noises from the radios and mentally ill patients.  Plaintiff's grievance was granted at the informal level on March 17, 2010, in which staff responded "Sgt. Anderson has been notified that you are hearing loud noises."  (ECF No. 1, at p. 13.)

Defendant Anderson argues that when Plaintiff filed a grievance to custody staff complaining of the loud noise and interference with his ability to sleep, Defendant Anderson responded to Plaintiff's grievance within a few days, indicating the inmate had been moved to another cell, and

1    Plaintiff informed a mental health provider on March 10, 2010, that the noise had stopped.   Defendant

2    Anderson moves for summary judgment by arguing that Plaintiff was exposed to noise for only a few

3    days, and there is no evidence that Defendant Anderson disregarded an excessive risk to Plaintiff's

4    health.   Anderson further declares that he made daily tours of the SHU and found no noise in the

5    building to be excessive or loud.

6          Plaintiff's evidence creates a genuine issue of material fact relating to the extent of Defendant

7    Anderson's knowledge of the conditions of Plaintiff's confinement within the SHU, and his responses

8    thereto, which form the basis of Plaintiff's claim upon which this action proceeds.   Even if one

9    disruptive inmate was removed from the SHU on or about March 10, 2010, such instance does not

10   negate the extent of Defendant Anderson's knowledge of the problem which persisted beyond such

11   date as evidenced by Plaintiff's grievances, and the adequacy of his actions in response thereto.   Given

12   that issues of material facts exist, Defendant Anderson is not entitled to summary judgment, and his

13   motion must be denied.

14          2.     Objective Component of Eighth Amendment Claim

15          The Ninth Circuit has held that public conceptions of decency inherent in the Eighth

16   Amendment require that inmates be housed in an environment that, if not quiet, is at least reasonable

17   free of excessive noise.   Keenan v. Hall, 83 F.3d 1083, 1090 (9th Cir. 1996), amended 135 F.3d 1318

18   (quoting Toussaint v. McCarthy, 597 F.Supp. 1388, 1397, 1410 (N.D. Cal. 1984), aff'd in part, rev'd

19   in part on other grounds, 801 F.2d 1080, 1110 (9th Cir. 1986).   In Keenan, the plaintiff's allegations

20   that, for six months in a maximum security cell, "at all times of day and night inmates were

21   'screaming, wailing, crying, signing and yelling,' often in groups, and that there was a 'constant, loud

22   banging'" were sufficient to defeat the defendants' motion for summary judgment.   Keenan, 83 F.3d at

23   1090.   In Toussaint, the Court recognized that "[t]he unceasing racket exerts a profound impact on

24   lockup inmates, some of whom consider it to be the single worst aspect of their confinement.   Many

25   shove papers, erasers, and other foreign objects into their ears in an attempt to shut it out.   Noise

26   contributes to the great difficulty many experience in sleeping.   Doctors at both prisons testified that

27   the relentless roar adversely affects the mental health of segregated inmates.   The noise dulls the

28

13

thinking of the prisoners and even damages the hearing of some." <u>Toussaint</u>, 597 F.Supp. at 1397-1398.

Defendant argues that the undisputed evidence establishes that he dealt with Plaintiff's complaints of noise both quickly and effectively.  Although Plaintiff initially filed a grievance about the noise in the SHU in February 2010, it was made to medical, rather than custody, staff.  Plaintiff complained of an inmate making loud noise early in March 2010, and Sergeant Anderson notified Plaintiff that the inmate had been removed from his cell and transferred.  In addition, Plaintiff informed medical staff that the problem was no longer an issue.  Defendant contends Plaintiff cannot establish that being exposed to noise for a few days rose to the level of "conditions posing a substantial risk of serious harm" to inmate health and safety.

However, Plaintiff's claim amounts to more than just a few days of exposure to the excessive noise as argued by Defendant.  Rather, the undisputed facts show that Plaintiff was housed in the SHU from February 25, 2009 through March 11, 2011, and, at a minimum, he was subjected to excessive noise and sleep deprivation from November 2009 (when he complained of the noise to Dr. Thomas) to July 13, 2010 (the time of filing the instant complaint).  Thus, the objective component of an Eighth Amendment violation has been established, and Defendant Anderson's argument to the contrary creates a material fact.

3.    <u>Qualified Immunity</u>

Defendant argues, in the alternative, that summary judgment is warranted because he is entitled to qualified immunity on Plaintiff's Eighth Amendment claim.  Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established. <u>Id</u>.  In resolving these issues, the court must view the evidence in the light most favorable to plaintiff

and resolve all material factual disputes in favor of plaintiff.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

Viewing the evidence in the light most favorable to Plaintiff, the Court has determined as detailed above, trial issues of material facts exists as to whether Defendant Anderson  acted with "deliberate indifference to a substantial risk of serious harm."  Accordingly, the first prong of the qualified immunity inquiry set forth in Saucier has been met.  Saucier, 533 U.S. at 201.

Turning to the second prong, the court must determine whether the right was clearly established.  Id.  The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ."  Saucier v. Katz, 533 U.S. 194, 201 (2002).  "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Saucier, 533 U.S. at 202 (citation omitted).

At the time of the events in question, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it.  Farmer v. Brennan, 511 U.S. at 837-45.  Given that the law was clearly established, the inquiry turns to whether it would be clear to a reasonable officer that his conduct was unlawful in the circumstance confronted by defendant.  Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1051 (9th Cir. 2002).  As previously stated, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff.  Martinez, 323 F.3d at 1184.  Plaintiff contends that he was subjected to conditions of confinement in violation of the Eighth Amendment by being housed in the SHU for several months to constant, painful, debilitating noise in the SHU, prohibiting his ability to sleep, making his dizzy, which resulted in him sticking varied objects into his ears in order to block out the noise, which occurred 24 hours a day.  Viewed in Plaintiff's favor, the Court finds that it would have been clear to a reasonable officer that subjecting Plaintiff to excessive noise causing sleep deprivation for several months would pose a substantial risk of serious harm.  Accordingly, the Court finds that Defendant Anderson is not entitled to qualified immunity.

4.      Plaintiff's Pending Motions to Compel

On January 9, 2015, Plaintiff filed a further request for relief as to his prior motion to compel. (ECF No. 100.)  On January 16, 2015, Plaintiff filed a motion to subpoena Defendant Anderson's job hours.  (ECF No. 101.)

On January 26, 2015, Plaintiff filed a motion for the Court to rule on the motions for summary judgment and disregard the motions to compel recently filed.

In as much as Plaintiff has withdrawn his motion to compel and request for subpoenas and, on January 6, 2015, the Court denied Plaintiff's prior motion to compel, the Court will deny Plaintiff's motions as MOOT.

## IV.

## CONCLUSION AND ORDER

Based on the foregoing,

IT IS HEREBY ORDERED that:

1.      Plaintiff's motion for summary judgment is DENIED;

2.      Defendant's motion for summary judgment is DENIED; and

3.      Plaintiff's motion to compel, request for subpoenas, and request for ruling on the instant motion are DENIED as MOOT.

IT IS SO ORDERED.

Dated:   **March 9, 2015**

UNITED STATES MAGISTRATE JUDGE

16